Opinion.

## Richmond.

## J. A. HANNAH v. BOARD OF SUPERVISORS OF BUCK-INGHAM COUNTY.

### December 18, 1924.

1. EMINENT DOMAIN—*Bridges—Offer of Gift of Land by Owner—Damages.*—Where a landowner joined others in petitioning boards of supervisors to establish a bridge, and offered on several occasions to give the land for the right of way on one side of the water, but made no binding contract to that effect, and ultimately refused to do so, he is within his legal rights in demanding compensation in, accordance with the statute.

2. EMINENT DOMAIN—*Proceedings Dismissed for Irregularities—Protection of the Public where Work has been Done.*—Where eminent domain proceedings were instituted to condemn land of defendant for a bridge, and after the commissioners had assessed the damages of the defendant the eminent domain proceedings were reversed by the circuit court, and in the meantime the bridge had been built, defendant will be enjoined from interfering with the public use of the bridge for such reasonable time as may be necessary to perfect title in the Commonwealth.

Appeal from a decree of the Circuit Court of Appomattox county.   Decree for complainant.   Defendant. appeals.

*Modified and remanded.*

The opinion states the case.

*A. H. Clement* and *F. C. Moon,* for the appellant.

*Hubard & Boatwright,* for the appellees.

McLEMORE, J., delivered the opinion of the court.

The counties of Appomattox and Buckingham are separated by the Appomattox river, which forms the eastern boundary of the one and western boundary of the other.

Upon request in the form of petitions to the boards of supervisors of the two counties, presented in 1919 (in both of which petitions the appellant's name appears as one of the signers), proceedings were begun looking to a view of the river and approaches at Moseley's Ford by a joint commission from the two counties, for the purpose of ascertaining whether or not a new road and bridge should be constructed at this point in keeping with the prayer of the petitioners. The viewers reported in favor of establishing the road and building the bridge.

Negotiations were conducted between the representatives of the two counties leading ultimately to an agreement covering the terms and conditions under which the bridge and the roads approaching same were to be constructed.

[1] Rights of way for the road and the abutments on the Buckingham side of the river were donated by contiguous owners. On the Appomattox side the new construction was entirely on the land of Hannah, who, though offering on several occasions to give the right of way, made no binding contract to that effect and ultimately refused to do so, at the same time demanding that proper compensation be paid him in accordance with the statute in such cases made and provided. In making this demand we think he was within his *legal* rights.

[2] On September 1, 1921, the board of Appomattox appointed commissioners to assess the damages to the lands of appellant and report. This mission was performed with commendable promptness and, on Septem-

ber 7, 1921, the commission reported to the board that $200.00 would be just compensation for all the damages sustained. This report was excepted by Hannah, and appealed to the circuit court where an order was entered April 3, 1922, that the condemnation proceedings before the board "are hereby reversed, annulled and set aside, etc."

There were numerous efforts during the interval between the first appearance of the viewers on the premises and the final order of the court of April 3, 1922, to settle the differences, all of which failed.

In the meantime, the work of constructing the bridge, having been let to the lowest bidder, was completed and accepted in the fall of 1921, some months before the order of April 3, 1922, was entered, and the road and bridge was thereafter used by the public from the time of the completion until July 4, 1922, at which time the said appellant closed the bridge to the public and forbade its use to all persons.

The use of this road is of great convenience to the inhabitants of Buckingham county especially, and its closing by the appellant resulted in considerable embarrassment to them. Accordingly the board of Buckingham county, on July 27, 1922, presented its bill for an injunction to the judge of the Circuit Court of Appomattox county, praying that James Hannah be made a defendant and that he be "enjoined and restrained from in any way interfering with the said bridge or those using same" and for general relief.

The judge of that circuit, the late Hon. Geo. J. Hundley, on said 27th day of July, 1922, entered an order enjoining and restraining the appellant, his agents and employees, from interfering in any way with its free use by the public of the bridge in question. To this decree an appeal was allowed by one of the judges of the

Supreme Court of Appeals which brings before us for review the propriety of granting the injunction.

In the argument before this court, counsel for appellant stated in substance that appellant was forced to proceed as he had in this cause in order that he might receive just and legal compensation for the property taken, as provided by the statute, Code of Virginia, chapter 176, and that beyond this he was actuated by no other motive.

As already intimated, we are of the opinion there was no enforceable dedication of the right of way by appellant, and it follows that he is entitled to be compensated for the land taken and for such damages to the remaining land, if any, as may have been caused by the construction of the road and bridge, provided they are such as are within the purview of the statute.

As the statute provides an efficient and prompt method of ascertaining the damages, we think the boards of supervisors of the counties interested should proceed at once to acquire title to the property already taken and now being used by the public. This being clearly their duty, we confidently assume they will discharge it as soon as this opinion is communicated to them.

This bridge and roadway having been constructed after condemnation proceedings had been begun, and, before the proceedings were dismissed for irregularities which do not appear in the record, and the work having been done therefore in perfectly good faith, should be protected by the court against all interference or attempted control, and the public use thereof made secure for such reasonable time as the Circuit Court of Appomattox or the judge thereof shall deem necessary in order to perfect title in the Commonwealth to the prop-

erty necessary or requisite for the enjoyment by the public of the road and bridge—the subject matter of this litigation.

As was said in *New River, etc.,* v. *Honaker,* 119 Va. 641, at page 657, 89 S. E. 960, 965, Ann. Cas. 1917-C, 132, appellee was not a naked trespasser, entering "without any authority, express or implied." On the contrary, condemnation proceedings had been instituted, commissioners appointed, and damages assessed.

In 10 R. C. L. page 230, is to be found the following very apt statement of the law:

"When one is in possession, and is operating or performing some public service, the discontinuance or interruption of which would cause great public inconvenience or injury, if he possess the power of condemning the owner's property and has failed to do so, an unconditional injunction will not issue, but a reasonable opportunity to acquire the owner's rights or to pay him his damages should be allowed before the injunction takes effect. *N. Y.* v. *Pine,* 185 U. S. 73, 22 S. Ct. 946, 46 L. Ed. 396; *Simmons* v. *Paterson,* 60 N. J. Eq. 385, 45 A. 995, 48 L. R. A. 717, 83 Am. St. Rep. 642.

The only possible damage that can be done appellant by this disposition of the matter is that which he sustains by having his legitimate compensation for the property withheld from the time it should have been paid him until it is actually received. This can well be taken care of either by increase in the amount to be awarded him, or interest on the amount that should have been awarded from the time the property was taken up to the time the money is actually paid him.

The cause is therefore remanded for such further proceedings as are indicated in this opinion and not inconsistent therewith.

As an unconditional injunction should not have been granted, we think the appellant should recover his costs expended in prosecuting his appeal in this court.

*Modified and remanded.*